BAILEY, Judge,
concurring in result.
[24] The majority concludes that, because the recent revisions to the sentencing modification statute are neither remedial nor procedural, a prior version of the sentencing modification statute applies to the Johnsons’ petitions. I agree that the prior version of the statute applies in this case, but do so because of the time the Johnsons filed their petitions. I disagree that their dates of conviction and sentencing are controlling and therefore respectfully concur only in the result.
[25] On December 19, 2013, the John-sons each filed a request for reentry court evaluation,[6] which, as the majority states, the trial court treated as petitions for sentence modification. The court initially denied the requests on December 26, 2013, but on February 3, 2014, entered orders directing the New Castle Correctional Facility to prepare “as soon as possible” progress reports on the Johnsons “so that the court may determine if a modification hearing can be set in this cause.” (App. 302, 595.) The court set a hearing for June 2, 2014, after which the court again denied their requests for re-entry court evaluation due to the State’s objections. The court then set another sentence modification hearing for June 9, 2014, which was rescheduled twice and ultimately held on August 11, 2014.
[26] At the time the Johnsons filed their petitions in December 2013, the sentence modification statute provided, in relevant part:
(b) If more than three hundred sixty-five (365) days have elapsed since the convicted person began serving the sentence and after a hearing at which the convicted person is present, the court may reduce or suspend the sentence, subject to the approval of the prosecuting attorney.
See I.C. 35-38-l~17(b) (Supp. 2012) (emphasis added). By applying this version of the statute, the trial court denied the Johnsons’ petitions due to lack of prosecu-torial approval.
[27] In 2013, when the Indiana General Assembly passed substantial revisions to the Indiana criminal code, Indiana Code section 35-38-1-17 was amended to remove the need for prosecutor approval when a convicted person seeks a sentence modification more than 365 days after he or she began serving his or her sentence. See Pub.L. No. 158-2013, § 396 (2013); Pub.L. No. 168-2014, § 58 (2014). As amended, the statute provided:
(c) If more than three hundred sixty-five (365) days have elapsed since the convicted person began serving the sentence, the court may reduce or suspend the sentence and impose a sentence that the court was authorized to impose at the time of sentencing. The court must incorporate its reasons in the record.
*1139 I.C. § 35-38-l-17(c) (2014) (“the revised statute”). The revised statute became effective July 1, 2014. In 2014, the General Assembly also enacted a savings clause that provides that the new criminal code does not affect penalties incurred, crimes committed, or proceedings begun before' July 1, 2014. See I.C. § l-l-5.5-21(a) (Supp. 2014) (the “savings clause”).
[28] The trial court applied the prior version of the statute because the John-sons were convicted and sentenced in 1997, before the new criminal code was in effect. On appeal, the Johnsons argue that the trial court erred when it applied the prior version and that their petitions should have proceeded under the revised statute’s provisions.
[29] Before us, then, is the issue of whether the revised statute applies to petitions filed by persons convicted and sentenced before July 1, 2014. ■ This is a. question of statutory interpretation. The overarching principle in statutory interpretation is to first decide “whether the legislature has spoken clearly and unambiguously on the point in question.” Sloan v. State, 947 N.E.2d 917, 922 (Ind.2011) (quoting Rheem Mfg. Co. v. Phelps Heating & Air Conditioning, Inc., 746 N.E.2d 941, 947 (Ind.2001)). If a statute is clear and unambiguous, we do not apply any rules of construction other than giving effect to the plain and ordinary meaning of the language. Id. Thus, we will not delve into legislative intent unnecessarily if no ambiguity exists. Id.
[30] In my view, the plain language of subsection (c) of the revised statute means that, after the statute’s effective date of July 1, 2014, the prosecutor’s consent is no longer required when the trial court is asked to consider reducing or modifying a sentence that the convicted person has been serving for more than 365 days. Notably, no provision in the statute limits its application only to persons convicted or sentenced on or after July 1, 2014. Thus, under- the plain meaning of the statute, I would apply the statute prospectively to all petitions for sentence modification filed on or after July 1, 2014, regardless of the petitioner’s conviction or sentencing date. After extensive discussion and analysis of relevant case law, this was the reasoning recently adopted by a majority of this panel in Moore v. State, 30 N.E.3d 1241 (Ind.Ct.App.2015).
[31] As it turns out, the question at issue here is one that has been presented multiple times to this Court in the last six months, producing three published' opinions that conflict with Moore. In Hobbs v. State, Hobbs was convicted and sentenced in 2006 and petitioned for sentence modification on July 23, 2014. 26 N.E.3d 983, 984-85 (Ind.Ct.App.2015) (opinion issued January 29, 2015 and ordered published March 2, 2015). ■ The trial court denied Hobbs’s petition, and on appeal he argued that the'revised statute should apply to his case. Id. at 985. Engaging in the following analysis, a pane! of this Court held:
[The revised statute] became effective on July 1, 2014, as part of our General Assembly’s overhaul of ‘our criminal code pursuant to'P.L. 158-2013 and P.L. 168-2014. It was not in effect at thé time Hobbs committed his offense against L.M.; rather, the law in effect at that time stated in relevant part: “If more than three hundred sixty-five (365) days have elapsed since the defendant began serving the sentence and after a hearing at which the convicted person is present, the court may reduce or suspend the sentence, subject to the approval of the prosecuting attorney.” I.C. § 35 — 38—1—17(b) (2005) (emphasis added); see also Harris v. State, 897 N.E.2d 927, 928-29 (Ind.2008) (“The sentencing statute in effect at the time a crime is *1140 committed governs the sentence for that crime.”).
Despite Hobbs’[s] assertions to the contrary on appeal, there is no question that the current version of Indiana Code Section 35-38-1-17 does not apply to him. I.C. § 1-1-5.5-21 (“The general assembly does not intend the doctrine of amelioration ... to apply to any SECTION of P.L. 158-2013 or P.L. 168-2014”); see also Marley v. State, 17 N.E.3d 335, 340 (Ind.Ct.App.2014) (“It is abundantly clear ... that the General Assembly intended the new criminal code to have no effect on criminal proceedings for offenses committed prior to the enactment of the new code.”), trans. denied. Hobbs’[s] arguments to the contrary are without merit.13
Id. at 985-86.
[32] Subsequently, in Swallows v. State, 31 N.E.3d 544 (Ind.Ct.App.2015), another panel of this Court affirmed a trial court’s decision to apply the prior version of the statute to a petition for sentence modification filed on October 1, 2014. 31 N.E.3d at 545. The court reasoned that “[o]ur decision is governed by this court’s reasoning in Hobbs,” id. at 547, and quoted the portion of Hobbs excerpted above. Id. at 547. Then, without further discussion of the savings clause or legislative intent, the court concluded:
Noting the plain meaning of the savings clause, and following the intent of the Legislature and our court’s reasoning in Hobbs, we conclude that the current version of Indiana Code section 35-38-1-17, which became effective July 1, 2014, does not apply to Swallows’s petition to modify a sentence that he began serving in 1989.
Id. at 547. Most recently, in Carr v. State, 33 N.E.3d 358 (Ind.Ct.App.2015), yet another panel of this Court held specifically that the savings clause barred Carr’s petition for sentence modification, filed on July 10, 2014, because “Carr’s crime was committed in 1999, well before the effective date of the new criminal code[.]” 33 N.E.3d at 359 (also citing Hobbs, 26 N.E.3d at 985).
[33] In each of these cases, the Court . focuses on the petitioner’s conviction or sentencing date and concludes that, because the petitioner was convicted and sentenced before July 1, 2014, the prior version of the statute applies. As best as I can discern from the citations and minimal discussion of those authorities, these decisions have rested on two theories: (1) the law in effect at the time of conviction and sentencing governs a convicted person’s sentence, and therefore the sentencing modification law in effect at the time of conviction and sentencing must govern a petition for sentence modification subsequently filed, see Hobbs, 26 N.E.3d at 985 (citing Harris v. State, 897 N.E.2d at 928-29 (“The sentencing statute in effect at the time a crime is committed governs the sentence for that crime.”)); or (2) the savings clause bars application of the revised statute to a conviction or sentence imposed prior to July 1, 2014. ' See Hobbs, 26 N.E.3d at 985 (citing I.C. § 1-1-5.5-21 (“The general assembly does not intend the doctrine of amelioration ... to apply to any SECTION of P.L. 158-2013 or P.L. 168-2014”)); Carr, 33 N.E.3d at 359.
[34] For the reasons expressed in Moore and reaffirmed and expanded upon here, I respectfully disagree with my colleagues on these two theories. As to the first, I believe that when a petition for sentence modification is presented to the court, the petition date — not the conviction or sentencing date — is the critical date for determining the applicability of the statute. Second, the savings clause does not bar application of the revised statute to a petition filed after the effective date of *1141 July 1, 2014, because the revised statute, by its terms, can have no ameliorative effect on a conviction or sentence previously imposed. I address each of these arguments in turn.

Law in Effect at the Time of Petition

[35] A trial judge generally has no authority over a convicted person after sentencing. State v. Harper, 8 N.E.3d 694, 696 (Ind.2014). However, the legislature may give the court authority, under certain circumstances, to modify a convicted person’s sentence. Id. Thus when a convicted person files a petition for sentence modification, he or she invokes the legislature’s limited grant of jurisdiction to the trial court for the purposes of sentence modification. Although any question of sentence modification necessarily refers to the sentence previously imposed, the sentence modification petition is a proceeding separate and apart from the adjudication of the case that resulted in conviction and sentencing. Thus, in the context of sentence modification, the date on which the convicted person invokes the court’s jurisdiction is the critical date.
[36] I agree with the statement of law quoted in Hobbs that, as a general rule, courts must sentence a convicted person under the statute in effect at the time the person committed the offense. Harris v. State, 897 N.E.2d 927, 928-29 (Ind.2008). See also Payne v. State, 688 N.E.2d 164, 165 (Ind.1997). However, I believe that the general rule has no application here, where a sentence is not being imposed.
[37] This Court has previously examined the effect of changes to the sentence modification statute in Willis v. State, 567 N.E.2d 1170 (Ind.Ct.App.1991), trans. denied. At the time Willis originally was sentenced, the modification statute limited the time in which sentence modification could take place “to a period within 180 days of sentencing.” Id. at 1171. However, before Willis filed his petition, the statute was amended to remove the 180-day limitation. Id. Willis petitioned the trial court for modification four years after he was sentenced — firmly outside the 180 day window. Id. The trial court applied the statute in effect at the time his sentence was imposed and held that Willis was ineligible to seek modification. Id.
[38] On appeal, this Court acknowledged the general rule that the law in effect at the time a crime is committed controls sentencing, but ultimately held that the general rule did not apply to Willis’s petition. Id. at 1172. The Willis court explained that, unlike prior cases in which the convicted' persons sought sentencing under more lenient statutes enacted after the commission of their offenses, in Willis’s case
no question of sentence is involved. Rather, Willis merely sought to petition for modification of his sentence under provisions of a later enacted statute which enlarged the time in which he could so petition.
Id. (emphasis added). In other words, because the sentence modification statute governs the process by which a convicted person seeks sentence modification, not the imposition of sentences, the general rule is inapplicable.
[39] Similarly, the general rule has no effect in this case. Just as Willis did not ask the court for more lenient sentencing, the revised statute here explicitly provides that on review, “the court may reduce or suspend the sentence and impose a sentence that the court was authorized to impose at the time of sentencing.” I.C. § 35-38-l-17(c) (Supp.2014). Thus, under the revised statute, a trial court may only impose a sentence authorized by the law in effect at the time of sentencing or within the court’s discretion under the terms of the convicted person’s plea agreement. *1142 Even where a convicted person seeks sentence modification under the revised statutory terms, the statute ensures that the person is still sentenced “under the statute in effect at the time the person committed the offense.” Payne, 688 N.E.2d 164, 165 (Ind.1997). This provision of the revised statute eliminates the primary concern expressed in Hobbs that sentence modifications sought under the revised statute run afoul of the general rule that “[t]he sentencing statute in effect at the time a crime is committed governs the sentence for that crime.” Harris, 897 N.E.2d at 928-29.
[40] Furthermore, the Willis court’s conclusion that the change to the statute was “procedural, not substantive” was essential to the court’s holding. Id. This procedural aspect distinguished Willis’s case from an earlier case, State v. Crocker, 270 Ind. 377, 385 N.E.2d 1143 (Ind.1979), in which our supreme court held that a convicted person’s petition for modification could not proceed under a newly-enacted modification statute. The Willis court explained the distinction:
In Crocker, there was a substantive change because the new statute gave the sentencing court new powers, that is, the power to reduce as well as suspend the remainder of the sentence. No such substantive change is involved here. At the time of sentencing Ind.Code § 35-38-l-17(b) permitted the sentencing court to modify a sentence, either by reduction or suspension, at any time within 180 days of sentencing. The amendment effective June 1, 1985, did not make any changes in the sentencing court’s power over the sentence, but merely permitted, under certain circumstances, the sentencing court to consider sentence modification of the same kind more than 180 days after sentencing.
Id. The Willis court held that because the legislature had merely altered the procedure by which a sentence could be modified and there was no change in the court’s sentencing power, Willis could petition for modification under the new statute.
[41] The procedural nature of the change in Willis was thus: under the old modification statute, the court could not act upon Willis’s request; but under the new statute, his petition could proceed to the trial court for consideration on its merits. Here, when the General Assembly revised the' modification statute to remove the need for prosecutorial approval, it also lifted a procedural barrier that prevented petitions from reaching trial courts for review on their merits. Before the revision, the court could not act upon a modification request absent the prosecutor’s consent; now, the court may hear the convicted person’s petition on its merits and decide whether to modify the sentence. Thus, the recent revision to the sentence modification statute implemented a procedural change akin to the change made in Willis.
[42] The majority takes issue with the characterization of the change as “procedural,” likening it more to the substantive change at issue in Crocker. As the court in Willis explained, the change in Crocker was substantive because it gave the court “the power to reduce as well as suspend the remainder of the sentence.” Id. (emphasis added). At the time Crocker was sentenced, the court could only suspend a sentence to probation under the prior statute, but under the new statute, the court had the added power to reduce the sentence. That is, the revision gave the court the power to modify a sentence in a way that the court could not have done before. The options available to the court were now different, and that was a substantive change in the court’s power over the sentence.
*1143 [43] The revised statute does not change the trial court’s authority. Here, the trial court still retains all of the power over the sentence that it had before. In our adversarial system, the power to impose a sentence rests with the court. Though the prosecutor’s consent to modification was required under the prior version, the prosecutor never had the ability to reduce or modify the sentence. The prosecutor’s consent was only a condition on the trial court’s authority. See Beanblossom v. State, 637 N.E.2d 1345, 1348 (Ind.Ct.App.1994) (“Even though the authority to modify is subject to such a condition, the statute does not take judicial pozver away from the trial court and give it to the prosecuting attorney”) (emphasis added), trans. denied. Thus, by lifting the requirement that the prosecutor consent, the legislature merely enacted a procedural change.
[44] Of course, the prosecutor’s role in representing the State’s interest at a modification hearing is critical. This role is clearly preserved by the revised statute’s provision that a court must notify the prosecuting attorney and the prosecutor must give notice to the victim if the court sets a hearing on the petition. I.C. § 35-38-1-17(d) (Supp. 2014). Furthermore, if a hearing is not held, a court may only reduce or suspend a sentence if the prosecuting attorney agrees to the reduction or suspension and the convicted person waives his or her right to be present. I.C. § 35-38-l-17(g) (Supp. 2014).
[45] Because the legislature implemented a procedural change and expressly provided that the court may only “impose a sentence that the court was authorized to impose at the time of sentencing,” I.C. § 35-38-l-17(c), I would hold that the revised statute applies to petitions filed after the effective date of the statute, even where the petitioner was convicted and sentenced prior to July 1,2014.

Savings Clause

[46] The second line of reasoning advanced by Hobbs and its progeny is that, because the revised statute was enacted as part of the new criminal code, the code’s savings clause prevents persons who were convicted or sentenced before July 1, 2014 from petitioning for sentence modification under the revised statute’s terms. The savings clause provides:
(a) A SECTION of P.L. 158-2013. or HEA 1006-2014 does not affect:
(1) penalties incurred;
(2) crimes committed; or
(3) proceedings begun;
■before the effective date of that SECTION of P.L. 158-2013 or HEA 1006-2014. Those penalties, crimes, and proceedings continue and shall be imposed and enforced under prior law as if that SECTION of P.L. 158-2013 or HEA 1006-2014 had not been enacted.
(b) The general assembly does not intend the doctrine of amelioration (see Vicory v. State [272 Ind. 683], 400 N.E.2d 1380 (Ind.1980)) to apply to any SECTION of P.L. 158-2013 or HEA 1006-2014.
I.C. § 1-1-5.5-21 (Supp.2014). The revisions to Indiana Code Section 35-38-1-17 occurred pursuant to Public Law 158-2013 and House Enrolled Act 1006-2014.[7] See Pub.L. No. 158-2013, § 396 (2013); Pub.L. No. 168-2014, § 58 (2014).
[47] In Hobbs, Carr, and the majority here, my colleagues would read the savings clause to bar application of all provisions of the new criminal code in all proceedings brought by a person whose original conviction or sentencing date was • before July 1, 2014. But the legislature *1144 did not cast such a wide net, and I believe that, because a petition for sentence modification initiates a proceeding separate and apart from conviction and sentencing, the savings clause does not bar application of the revised statute when a sentence modification petition is filed after July 1, 2014.
[48] Subsection (a)(3) provides that the new code may not affect a “proceeding begun” before July 1, 2014. As discussed above, sentence modification petitions are separate proceedings that invoke the legislature’s limited grant of jurisdiction to the court for the purpose of reducing or modifying a sentence. These proceedings are initiated when the convicted person files his or her petition. Thus, the language of subsection (a)(3) procedurally bars application of the revised statute to petitions filed before July 1, 2014, but allows petitions filed after July 1, 2014 to be affected by the new code.
[49] Even in proceedings begun after July 1, 2014, however, the savings clause prohibits sections of Public Law 158-2013 or HEA 1006-2014 from affecting “penalties incurred” or “crimes committed” before July 1, 2014, or producing ameliorative effects. See I.C. §§ l-l-5.5-21(a)(l)-(2) & (b) (Supp.2014).
[50] Public Law 158-2013 was “a voluminous act amending Indiana’s criminal sentencing scheme.” Pavlovich v. State, 6 N.E.3d 969, 975 n. 3 (Ind.Ct.App.2014), trans. denied. The act overhauled the criminal code in part by reclassifying felony offenses from four classes to six levels and implementing a new sentencing scheme that frequently provides for reduced advisory sentences and sentencing ranges. Id. In my view, the language of subsections (a)(1) and (a)(2) of the savings clause evinces the legislature’s intent that those defendants who committed offenses prior to July 1, 2014 may not take advantage of the new classification and sentencing scheme.
[51] By lifting the requirement that the prosecutor consent to modification, the revised statute does not change the penalty range and does not redefine or reclassify a crime. Thus, the revisions to the sentence modification statute do not “affect” penalties incurred or crimes committed before July 1, 2014. I.C. §§ l-l-5.5-21(a)(l)(a)(2) (Supp.2014). And as already discussed, the revised statute only changed the procedure by which a person may request a sentence modification. In this way, the revised statute certainly “affects” the sentence modification process. But it does not “affect” a penalty imposed or crime committed simply because it changes the terms under which a person may seek sentence modification. See Willis, 567 N.E.2d at 1172.
[52] Subsection (b) of the savings clause also does not bar application of the revised statute to petitions filed after July 1, 2014. Subsection (b) of the savings clause states: “The general assembly does not intend the doctrine of amelioration (see Vicory v. State [272 Ind. 683], 400 N.E.2d 1380 (Ind.1980)) to apply to any SECTION of P.L. 158-2013 or HEA 1006-2014.” I.C. § 1-1-5.5-21 (Supp.2014). An ameliorative amendment is one in which the maximum penalty for a crime is reduced. Palmer v. State, 679 N.E.2d 887, 892 n. 4 (Ind.1997) (“The test to determine whether the legislature has enacted an ameliorative statute, where they have not expressly so stated, is whether the maximum penalty under the new statute is lower than the maximum penalty under the old.”). But here, as discussed above, the revised statute explicitly provides that when modifying a convicted person’s sentence, the court may only impose a sentence “that the court was authorized to impose at the time of sentencing.” I.C. § 35-38-l-17(c) *1145 (Supp.2014). The revised statute thus has no ameliorative effect because it does not reduce the maximum penalty available and only permits the court to impose a sentence that was permissible at the time of sentencing. And because the revised statute has no ameliorative effect, subsection (b) of the savings clause does not bar the revised statute’s application to petitions made by persons convicted or sentenced prior to July 1, 2014.[8]
[58] Finally, I observe that very recently in 2015, the General Assembly revised Indiana Code section 35-38-1-17, adding among other changes, the following language:
(a) Notwithstanding IC 1-1-5.5-21, this section applies to a person who:
(1) commits an offense; or
(2) is sentenced;
before July 1, 2014.
P.L. 164-2015 § 17(a) (effective May 5, 2015) (“the 2015 revision”). This language expressly sets aside the operation of subsection (a)(1) and (a)(2) of the savings clause on sentence modifications. And in my view, the reference to July 1, 2014, the effective date of the 2014 revised statute (not the effective date of the newest revision), indicates that the legislative intent was always to apply the revised statute to those persons convicted and sentenced before July 1, 2014. Notably, subsection (a)(3) was not exempted in the 2015 revision. This leaves intact the provision that the revised statute does not apply to proceedings begun before July 1, 2014.
[54] Furthermore, to the degree that the revised statute and the savings clause are ambiguous, the “primary goal of statutory construction is to determine, give effect to, and implement the intent of the Legislature.” City of Carmel v. Steele, 865 N.E.2d 612, 618 (Ind.2007). Here, the legislature provided that the criminal code “shall be construed in accordance with its general purposes, to,” among other enumerated goals, “secure simplicity in procedure,” “reduce crime by promoting the use of evidence based best practices for rehabilitation of offenders in a community setting,” and “keep dangerous offenders in prison by avoiding the use of scarce prison space for nonviolent offenders.” I.C. § 35-32-1-1(1), (5)-(6).
[55] The goal of simplicity in procedure is served when the procedure for sentence modification is the same for all petitioners. It is difficult to fathom that the legislative intent of the savings clause was to bar a procedural change that would ultimately streamline the sentence modification process.
[56] Moreover, by allowing petitions to proceed directly to courts for evaluation on their merits, courts will have greater ability to evaluate the rehabilitative efforts of a convicted person. If courts may determine that rehabilitation is better effectuated in a community setting, courts may then conserve scarce prison resources for dangerous offenders through appropriate sentence modifications. And although the statute no longer requires the prosecutor’s consent before the court hears a petition, the revised statute preserves the prosecutor’s critical role in representing the State’s interest in a sentence modification by requiring advance notice to the prosecutor of any modification hearing. I.C. *1146 § 35-38-l-17(d) (Supp.2014). Thus, no modifications may be made without first giving the prosecutor an opportunity to present evidence and argument at the hearing. And where a hearing is not held, the prosecutor must agree to the modification. I.C. § 35-38-l-17(g) (Supp.2014).

Johnsons’ Petitions

[57] In this particular case, the John-sons’ sentence modification proceedings began when they filed their petitions on December 19, 2013. Because the savings clause explicitly bars application of the revised statute to proceedings begun before July 1, 2014, the Johnsons’ petitions must proceed under the prior version of the sentence modification statute. Here, the prosecutor did not consent to the modification of the Johnsons’ sentences. Accordingly, I would affirm the trial court’s denial of the Johnsons’ petitions on this ground alone.
[58] The logical outgrowth of my view is that had the Johnsons filed on or after July 1, 2014, the revised statute’s terms would apply to their petitions. There is nothing unique about this approach. As previously mentioned, the Indiana criminal code was substantially revised in 2013. As a result of the savings clause, however, the new penalties apply only to those persons who commit offenses after July 1, 2014. For example, under the previous code, Dealing in a Schedule I, II, or III Controlled Substance was a Class B felony carrying a sentence of between six and twenty years. See I.C. §§ 35-48-4-2(a); 35-50-2-5 (2013). However, the same offense on or after July 1, 2014 is now classified as a Level 6 felony, subject to a significantly lower sentencing range of six months to two and one-half years. See I.C. §§ 35-48-4-2(a); 35-50-2-7(b) (2014). The savings clause has so far withstood the constitutional challenges brought against it. See Schaadt v. State, 30 N.E.3d 1, 3 (Ind.Ct.App.2015) (holding that the savings clause did not violate the equal privileges and immunities clause of the Indiana Constitution where the defendant would have faced lesser sentencing ranges had he committed his offense after July 1, 2014). This is because ‘“the time of a crime is selected as an act of free will by the offender.’” Id. (quoting Rondon v. State, 711 N.E.2d 506, 513 (Ind.1999)). Similarly, the petitioner selects the time to file for sentence modification. Thus, I am not troubled that the modification statute also draws a line in the sand based on the petition date.
[59] On first glance, it may also appear that, if all persons convicted and sentenced before July 1, 2014 may now file petitions under the revised statute, our trial courts will be overwhelmed by an influx of petitions. This concern is unfounded, as the legislature in the revised statute limited the number of times a convicted person may seek modification. Subsection (h) provides: “A convicted person may file a petition for sentence modification under this section: (1) not more than one (1) time in any three hundred sixty-five (365) day period; and (2) a maximum of two (2) times during any consecutive period of incarceration.” I.C. § 35-38-l-17(h) (Supp. 2014).[9] Because under this provision a convicted person must now make strategic decisions about the most advantageous time to make his or her two requests, trial courts are unlikely to be overwhelmed by sentence modification petitions.

*1147
Conclusion

[60] I would hold that the revised statute applies to all petitions filed on or after July 1, 2014, regardless of the petitioner’s conviction or sentencing date. Here, the Johnsons filed their petitions before the effective date of the statute, and thus the trial court did not err in applying the prior version of the statute and denying their petitions for lack of prosecutorial consent. Because I reach this conclusion on a different basis than the majority, I respectfully concur in the result.

. A reentry court is a type of problem solving court that is focused on the needs of individuals who reenter the community after a period of incarceration and that may provide a range of necessary reintegration services for eligible individuals. See I.C. § 33-23-16-9.

. H.E.A. 1006-2014 was enacted in 2014. See Pub.L. No. 168-2014 (2014).

. Because the revised statute would have no ameliorative effect on Moore's sentence, this Court’s recent discussion of the savings clause in Marley v. State, 17 N.E.3d 335 (Ind.Ct.App.2014), trans. denied, and cited in Hobbs, 26 N.E.3d at 986, is inapplicable here. Marley, under Indiana Appellate Rule 8, asked this Court to review the appropriateness of his sentence in light of the new criminal code. Marley thus sought to take advantage of the ameliorative effects of the new sentencing provisions, which is not an issue here.

. The 2015 revision places a similar limitation on the number of petitions that a convicted person may file. P.L. 164-2015 § 17(j). The 2015 revision also further restricts the number and timing of petitions filed by violent criminals, as defined by P.L. 164-2015 § 17(d). For example, the 2015 revision limits violent criminals to one petition made without the prosecutor's consent within 365 days of sentencing. P.L. 164-2015 § 17(k).